*In re* ESTATE OF JOHN P. TOBIN (Helen D. Willard, Petitioner-Appellant, v. Town and Country Bank of Springfield, as Adm'r, *et al.*, Respondents-Appellees (Sang Chris Oil Company, Intervenor-Appellee; Town and Country Bank, as Successor Ex'r of the Estate of John P. Tobin, *et al.*, Defendants)).

Fourth District   No. 4—88—0425

Opinion filed December 1, 1988.—Rehearing denied January 5, 1989.

Fuller, Hopp, Barr, McCarthy & Quigg, of Decatur (Leo W. Quigg, Jr., of counsel), for appellant.

Charles J. Gramlich and Daniel C. Lanterman, both of Gramlich Law Offices, P.C., of Springfield, for appellee Sang Chris Oil Company.

John M. Myers, of Pfeifer & Kelty, P.C., of Springfield, for other appellees.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by petitioner Helen Willard from a summary judgment entered in the circuit court of Champaign County. Petitioner is a niece and heir of John Tobin, who died on August 10, 1967. In addition to petitioner, the heirs included Tobin's 14 other nieces and nephews. However, Tobin's handwritten will, dated July 29, 1967, left the entire estate to one of the nephews, Robert Denny, petitioner's brother.

On September 1, 1967, a petition for probate of will and for letters of administration with will annexed was filed by Denny seeking admission of the will to probate and issuance of letters of administration. Neither the petition for probate of will nor any other documents submitted to the court revealed petitioner as an heir at law of the decedent, although the remaining 14 nieces and nephews were disclosed. Denny testified as to the heirship of the decedent, omitting any mention of petitioner.

After the will was proved up, it was admitted to probate on September 28, 1967, and Denny was appointed as administrator. Petitioner, who was residing in Heidelburg, Germany, did not receive any notice of the probate proceedings. Petitioner continued to reside in Germany until 1972, when she returned to the United States.

Subsequent to probate proceedings being initiated, Denny died as a result of an accident on November 6, 1969. Acting on behalf of Denny, his surviving spouse, Patricia, filed final accounts in the estate of Tobin. The estate was ultimately settled and the administrator discharged on January 20, 1970.

The sole asset of the Tobin estate consisted of a tract of real estate located in Sangamon County, Illinois, comprised of 3.61 acres. This land has now appreciated to approximately $198,000 per acre from an original total appraised value of $3,727 for land and improvements.

On April 18, 1978, petitioner filed her section 72 petition to set aside the prior orders of probate on the basis she had received no no-

tices of the pending probate proceedings and alleging the will to be a forgery. (Ill. Rev. Stat. 1977, ch. 110, par. 72 (now Ill. Rev. Stat. 1987, ch. 110, par. 2—1401).) Thereafter, a series of proceedings were conducted, as well as discovery initiated, and finally on March 13, 1984, the trial court allowed petitioner's then pending motion to reopen the estate. The Town and Country Bank was named successor executor.

On February 27, 1985, an amended petition for probate of the will and for letters testamentary was filed by the successor executor. The amended petition set forth all the previously listed heirs, legatees and devisees, and added petitioner.

On July 12, 1985, petitioner filed an objection to the admission of the will to probate, again alleging forgery. An amended objection was filed August 1, 1985. As respondents to her objection to admission of the will, petitioner named the successor executor and all of the then heirs of Tobin. The heirs are comprised of two groups, being: (1) the heirs of Robert Denny, hereinafter referred to as respondents, and (2) all other remaining heirs who would share in the event of intestate succession.

On December 13, 1985, the successor executor and the respondents filed a joint motion challenging the participation in this action of those heirs who received notice of the original petition, but who failed to contest the will within the requisite time period. After taking the matter under advisement, the trial court, on May 30, 1986, entered a docket order granting the motion and striking the challenged heirs as parties-defendant. Thereafter, the trial court entered a Supreme Court Rule 304 finding (103 Ill. 2d. R. 304) and an appeal was taken to this court. On review, this court reversed the order of the trial court and remanded the cause for further proceedings. *In re Estate of Tobin* (1987), 152 Ill. App. 3d 965, 505 N.E.2d 17.

On September 24, 1985, Sang Chris Oil Company sought leave to intervene as an interested party. It was alleged that on April 4, 1977, all or some of respondents had entered into an option agreement with Sang Chris Oil for sale of real estate, including the property derived from the Tobin estate. Subsequently, Sang Chris Oil and the respondents entered into a purchase agreement dated May 31, 1977, but the transaction has never been finalized. On April 18, 1978, the same day she filed her petition, petitioner also filed a *lis pendens* notice as document No. 788998 in the Sangamon County recorder's office. Intervention was allowed.

Following discovery, the respondents moved for summary judgment. The grounds alleged for summary judgment were two: that pe-

titioner should be barred from her will contest by the doctrine of *laches* for her delay in bringing her action and that the will contest had been rendered moot because the respondents had established title to the sole asset of the Tobin estate by adverse possession. In support of the motion for summary judgment, evidence was submitted demonstrating that Patricia Denny paid the real estate taxes for the property in question for tax years 1969 through 1976, payable in 1970 through 1977. The respondents maintained they had exercised dominion over the property during that period of time, including remodeling of the old, very small residence, in which one of them had resided from 1970 until the summer of 1974. The respondents contended that by possession of the property and payment of the real estate taxes for seven years, adverse possession had been established pursuant to section 13—109 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—109).

To the motion for summary judgment was attached a portion of the petitioner's deposition, wherein she acknowledged she had heard of Tobin's death approximately six weeks after it occurred and she assumed Tobin owned real estate, but had not known whether he had owned the property free of liens. As a result of the delay caused by petitioner's failure to institute legal proceedings until 1978, the respondents contended they had been prejudiced by the intervening death of the two attesting witnesses to Tobin's will and the fact they had entered into a contract to sell the property.

In opposition to the motion for summary judgment, petitioner submitted an affidavit in which she stated that although she had become aware of the death of Tobin shortly afterwards in 1967, she became aware of a purported will only in 1978. Upon learning of the purported will, she inquired as to the extent of any assets which Tobin had at the time of his death and secured an attorney to protect her interests. She also stated she believed at least some of the heirs of Tobin knew the purported will was a forgery.

The trial court entered summary judgment in favor of the respondents on May 12, 1988. The bases of the court's ruling were both *laches* and adverse possession. Petitioner filed a motion to reconsider on May 17, 1988. A hearing on the motion for reconsideration was conducted on May 20, 1988. For the first time, petitioner brought to the court's attention the deposition of William Storer, an expert document examiner, who expressed his opinion that the signatures on the will were forgeries. While acknowledging the expert's opinion that the signatures of Tobin and the attesting witnesses were forgeries, respondents argued that the issue strictly before the court was not

what the opinion of the expert was, but whether in fact there were attesting witnesses to the will. The trial court decided that regardless of what the expert testimony disclosed, the expert was not present at the execution of the will, and there were two attesting witnesses. The trial court entered a written judgment order on May 20, 1988, barring petitioner's claim.

The first issue to be considered is respondents' challenge to the jurisdiction of the circuit court on two grounds: (1) petitioner's will contest was not timely filed, a jurisdictional defect; and (2) the pleading filed by petitioner was entitled an "Amended Objection to Admission of Will to Probate and Issuance of Letters" rather than being designated a complaint or petition. This court has reviewed the current statutory provisions as well as those in effect at the time the will was admitted to probate. Both require notice to be sent to heirs. (Ill. Rev. Stat. 1987, ch. 110½, par. 6—10(a); Ill. Rev. Stat. 1967, ch. 3, par. 64b.) In either case, if an heir is omitted or notice not appropriately sent to said heir, and no waiver of notice is filed, an amended petition shall be filed. (Ill. Rev. Stat. 1987, ch. 110½, par. 6—11(a); Ill. Rev. Stat. 1967, ch. 3, par. 64b.) As to such omitted or unnotified heirs, the date of the order admitting the will on the amended petition is the effective date. *In re Estate of Tobin* (1987), 152 Ill. App. 3d 965, 505 N.E.2d 17.

Respondents suggest that the filing of an amended petition does not extend the time for filing a petition to contest a will. (Ill. Rev. Stat. 1987, ch. 110½, par. 6—21.) However, that statute did not come into effect until January 1, 1980, after the filing of the petition in this case. And even though the Illinois Supreme Court has determined that the statutory period for filing a will contest is jurisdictional and is not alleviated by fraudulent circumstances or any other fact for which the statute does not expressly provide (*Ruffing v. Glissendorf* (1968), 41 Ill. 2d 412, 243 N.E.2d 236; *Robinson v. First State Bank* (1983), 97 Ill. 2d 174, 454 N.E.2d 288), where the effective date as to an omitted or unnotified heir is the date of admitting the will on the amended petition (*In re Estate of Tobin* (1987), 152 Ill. App. 3d 965, 505 N.E.2d 17), then the statutory filing period for will contests by an omitted heir begins to run on the date of the admission of the will on the amended petition, and the petition in the instant case is timely filed. Therefore, the circuit court had jurisdiction.

Respondents' arguments concerning the title of the pleading filed are that section 8—1 of the Probate Act of 1975 states the petition may be filed in the estate and process shall issue as in other civil cases (Ill. Rev. Stat. 1987, ch. 110½, pars. 8—1(a), (b)), and therefore

the "Objection to Admission of the Will," although recognized in other States, is not a valid cause of action in Illinois. While the designation of a pleading should follow the form set out in the statute, under the Civil Practice Law pleadings are to be "liberally construed with a view to doing substantial justice between the parties." (Ill. Rev. Stat. 1987, ch. 110, par. 2—603(c).) As a result, it cannot be said the trial court has committed an abuse of discretion in considering the will contest on the pleadings filed by petitioner. On the other hand, it should be pointed out that by so stating this court is not, in any way, judicially creating any new procedure for challenging wills in addition to those now specified by statute. See Ill. Rev. Stat. 1987, ch. 110½, pars. 8—1, 6—21.

The next issue to consider is whether the trial court properly granted summary judgment. Initially, the trial court's ruling regarding adverse possession will be addressed.

■ Adverse possession is the possession of real estate by a party such that the possession is actual; hostile or adverse; open, notorious and exclusive; under claim or color of title; and continuous for a period set forth by statute. (*Tapley v. Peterson* (1986), 141 Ill. App. 3d 401, 489 N.E.2d 1170; 1 Ill. L. & Prac. *Adverse Possession* §1, at 368 (1988).) When the possession is by claim of title, the applicable limitation period is 20 years. (Ill. Rev. Stat. 1987, ch. 110, par. 13—101.) However, when the person asserting adverse possession has paid real estate taxes under a claim and "color of title," made in good faith, then a seven-year limitation period applies. *Beard v. Henn* (1963), 28 Ill. 2d 11, 190 N.E.2d 345; Ill. Rev. Stat. 1987, ch. 110, par. 13—109.

Adverse possession requires strict proof and cannot be made out by inference or implication. (*Cagle v. Valter* (1960), 20 Ill. 2d 589, 170 N.E.2d 593.) For once the elements of adverse possession have been proved, the possessor's interest ripens into actual title.

Color of title means the party claiming adverse possession has a document which appears to invest title in that person. For example, a deed purporting to convey title pursuant to a court decree would provide the grantee color of title even though the decree may be erroneous or even void for want of jurisdiction. *Huls v. Buntin* (1868), 47 Ill. 396.

■ Of course in this case there is no deed. Instead, the case involves a probated will. If one person devises all his real estate to another, the title to the land passes to the devisee at the time the instrument takes effect, and no title passes to the executor. *Alward v. Borah* (1942), 381 Ill. 134, 44 N.E.2d 865; *Holbrook v. Forsythe* (1884), 112 Ill. 306.

Petitioner contends that respondents do not have color of title because the will does not sufficiently identify the real estate involved. The entire text of the will is: "I, John P. Tobin after my death leave all real estate and personal properies [*sic*] to my nephew Robert Denny." In *Peabody v. Burri* (1912), 255 Ill. 592, 599, 99 N.E. 690, 693, the Illinois Supreme Court stated:

> "A will, the same as a deed, may be color of title. (*Baldwin v. Ratcliff, supra.*) A devise of all lands belonging to the testator in this State will by that general description pass to the devisee title to all such lands belonging to the testator at the time of his death, but such devise will not constitute color of title under the Limitation law. (*Holbrook v. Forsythe,* 112 Ill. 306.) The will must furnish a sufficient description to identify the land, (*Waterman Hall v. Waterman,* 220 Ill. 569,) without recourse to other writings."

In *Peabody*, however, the inventory of the estate did not refer to real estate, but instead listed a land warrant as personal property. Furthermore, the *Peabody* opinion does not mention that in *Waterman Hall v. Waterman* (1906), 220 Ill. 569, 77 N.E. 142, the Illinois Supreme Court found a general description in a will to be sufficiently specific by referring to another document, in that case a deed. More importantly, the cited case of *Holbrook v. Forsythe* (1884), 112 Ill. 306, does not appear to stand for the proposition for which it is cited. In *Holbrook*, the Illinois Supreme Court held that an individual, who admittedly never had legal title to a parcel of real estate, cannot pass "color of title" to his heirs by a will which does not specifically describe the property.

In the case at bar, Tobin had legal title, not merely color of title. Furthermore, the legal description of the subject property is included in the inventory of the Tobin estate. Since the estate consisted solely of this one tract of real estate, there could be absolutely no confusion about the real estate which was the subject of the claim for adverse possession.

■■ By referring to the records for the estate in order to identify the real estate, this court is recognizing that, unlike a deed, the "color of title" which derives from a will is, to some extent, dependent upon the probate proceedings. For even though a devisee is said to take title to land directly as soon as the will takes effect, if the will is overturned by a successful will contest or the renunciation of the will by a spouse, then the devise, too, is upset. In addition, the property is subject to the claims of creditors even though no title passes to the representative. (Ill. Rev. Stat. 1987, ch. 110½, par. 20—1.) There-

fore, reference can be made to the documents in a probated estate to provide sufficient description of the real estate referred to in the will for the purpose of establishing color of title under a claim of adverse possession.

■ Here, respondents have had color of title for over seven years, have paid the taxes that long, have been in actual possession of the subject property continuously for seven years, and have held the property openly, notoriously, and exclusively. Petitioner contends the respondents' possession has not been "adverse or hostile" as to her. Petitioner relies on the following language:

> "Where an entry is made as heir and without claim of an exclusive title, it will be deemed an entry not adverse to the rights of other heirs.
>
> The possession of one coheir may become adverse to other coheirs, however, by acts or declarations repelling the presumption that the possession is in the character as coheir and clearly showing a claim of exclusive right; but the hostile intent of the possession must be manifested by more unequivocal acts than are necessary where there is no privity between the parties. Thus, one heir, notwithstanding entry as an heir, may afterward, by ouster of coheirs, acquire an exclusive possession on which the statute will run against the coheirs." (3 Am. Jur. 2d *Adverse Possession* §260 (1986).)

In this case, respondents did not enter on the property as coheirs with petitioner. Instead, a will was filed and probated in which Robert Denny was named devisee, and after his death respondents took possession under claim and color of title. Clearly, respondents held the land as against all the world, including petitioner.

■ Petitioner further contends that the good-faith prerequisite of section 13—109 has not been met because the purported will was a forgery.

> "The rule is that the good faith required by [the statute] in the creation or acquisition of color of title is a freedom from design to defraud the person having the better title and the presumption that it was acquired in good faith will prevail until it is overcome by evidence of fraud or actual bad faith." (*Gochenour v. Logsdon* (1940), 375 Ill. 139, 142, 30 N.E.2d 666, 668.)

At the time the trial court entered summary judgment herein, the presumption of good faith was in full force and effect because no evidence of fraud or forgery was presented to the court. Thereafter, petitioner submitted an affidavit of a handwriting expert to support her motion for reconsideration. That affidavit said the expert believed all

the signatures on the will were forged. There was no evidence respondents were responsible therefor, or that respondents had in any way acted in bad faith.

■ Lastly, petitioner contends that section 13—111 expressly excepts her from any adverse possession claimed by respondents:

> "Sections 13—109 and 13—110 of this Act shall not extend to *** lands or tenements when there is an adverse title to such lands or tenements, and the holder of such adverse title is a minor, person under legal disability, imprisoned, out of the limits of the United States, and in the employment of the United States or of this State. Such person shall commence an action to recover such lands or tenements so possessed, as above set out, within 3 years after the several disabilities herein enumerated cease to exist, and shall prosecute such action to judgment, or in case of vacant and unoccupied land, shall, within the time last set out, pay to the person or persons who have paid the same, all the taxes, with interest thereon, at the rate of 12% per annum, that have been paid on such vacant and unimproved land." (Ill. Rev. Stat. 1987, ch. 110, par. 13—111 (formerly Ill. Rev. Stat. 1967, ch. 83, par. 8).)

However, this argument has no applicability here for two reasons. First of all, petitioner never raised this argument in the trial court and, therefore, has waived it for purposes of appeal. Secondly, petitioner returned to the United States in 1972, but failed to bring an action within the three years allowed by this statute, and as a result is further barred by this statute.

■ Petitioner's argument that the seven-year limitation period of section 13—109 does not begin to run until the disability is removed is not correct. Under the express provisions of section 13—111, the limitation in section 13—109 does not apply at all. If petitioner was under a legal disability as defined by section 13—111, then she had only three years, not seven years, to contest the will, and failing to so contest the will, the trial court's ruling remains proper for that reason as well.

This court need not decide, as respondents suggest, that the relevant clause of section 13—111 only applies to persons who are absent from the United States and in the employment of the United States or the State of Illinois, a class to which petitioner did not belong. Certainly, respondents' suggested interpretation of section 13—111 is consistent with the language of section 13—112, which is a more clearly worded statute.

Since the trial court's issuance of summary judgment is appropri-

ate on the basis of adverse possession, it is unnecessary to discuss the propriety of the ruling with regard to *laches*. For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

McCULLOUGH, P.J., and GREEN, J., concur.